**Evelyn A. CELLURA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. C 62–625.**

United States District Court
N. D. Ohio, E. D.

Aug. 24, 1965.

Robert J. Fetterman, Elyria, Ohio, for plaintiff.

Lawrence Doxsee, Department of Justice, Washington, D. C., for defendant.

GREEN, District Judge.

On February 9, 1962 a civil penalty in the amount of $3,205.45 was assessed against plaintiff under Section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672, with respect to the withheld federal income (employees' wages) and social security taxes of Shaker Steak House, Inc., for the third quarter of 1959 and the first quarter of 1960.

Section 6672 of the 1954 Code provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

The term person, as used in section 6672, is defined in section 6671(b), 26 U.S.C. § 6671(b), as:

> * * * an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

Plaintiff paid a part of the aforesaid assessments, $52.75 for the third quarter of 1959 and $53.42 for the first quarter of 1960, and thereafter brought this action to recover said payments. The defendant has counterclaimed for the assessed unpaid balances in the amount of $1,713.94 for the third quarter of 1959 and $1,385.34 for the first quarter of 1960.

During the times pertinent hereto plaintiff was employed by Shaker Steak House, Inc., as manager of a restaurant known as the Shaker Steak House. The sole stockholder, and president, of the said corporation was a Mr. Russell H. Frantz. Mr. Frantz was an invalid, and did not actively operate the restaurant. The plaintiff was hired by Mr. Frantz in January, 1959. Prior thereto the restaurant had been managed by a partner of Mr. Frantz, but that relationship had terminated prior to plaintiff's employment.

At the time plaintiff was hired as manager of the Shaker Steak House, the restaurant was in serious financial difficulty. The restaurant's credit was virtually gone, requiring it to operate on a cash basis, and there existed substantial tax delinquencies for withholding taxes for the year 1958.

Shaker Steak House, Inc., retained no funds in its checking account. Under Mr. Frantz's orders, as checks in payment of accounts receivable were received by the Shaker Steak House, the checks were deposited in the corporate bank account and the amount of the deposit was immediately withdrawn in cash so that there would be no funds in the account which creditors could attach. That practice had begun before plaintiff was employed, and plaintiff carried it on by orders of Mr. Frantz.

Plaintiff made two loans to Mr. Frantz, to be applied to the business of Shaker Steak House. The loans were in the amount of $5,000.00 early in 1959 and $3,000.00 later in the year. The moneys were deposited in a special account in plaintiff's own name, but were paid out at Mr. Frantz's directions. These loans were never repaid to the plaintiff.

During her tenure as manager of the Shaker Steak House plaintiff purchased depository receipts in the following amounts:

| | |
|---|---|
| First quarter 1959 | $407.52 |
| Second quarter 1959 | 967.78 |
| Third quarter 1959 | 825.00 |
| Fourth quarter 1959 | 140.00 |
| First quarter 1960 | none |

In compliance with instructions from Mr. Frantz, plaintiff paid to Internal Revenue on January 21, 1959 the sum of $1,617.50 drawn out of the special ac-

count. In addition, in April, 1959, pursuant to the directions of Mr. Frantz, plaintiff paid to Internal Revenue a check in the amount of $1,779.71 from the loan account in her name. A cashier's check in the amount of $430.36, derived from current receipts, was paid to Internal Revenue on May 27, 1959. On September 17, 1959 a payment was made to Internal Revenue of $1,583.90, consisting of a check for $583.90 drawn from the account in plaintiff's name and $1,000.00 supplied by Mr. Frantz. The sum of $383.27 was paid by Shaker Steak House, Inc. to Internal Revenue on December 1, 1959.

Virtually all of the aforesaid depository receipts and payments were applied by Internal Revenue to the delinquencies of Shaker Steak House, Inc. for 1958 and the first two quarters of 1959. The accountant for the corporation testified that he advised the Revenue agents that such payments were to be applied against current taxes, but that his instructions were disregarded.

It is the defendant's position that plaintiff was responsible for the handling of the corporation's funds, and was therefore a person who had a duty to pay over the withheld taxes, within the scope of § 6672. Defendant points to the fact that plaintiff did purchase some depository receipts for several of the quarters while she was manager, as evidence of the fact that she was the responsible agent of the corporation when it came to paying taxes.

The plaintiff contends that her authority as manager was restricted to paying those bills authorized by Mr. Frantz, and that she was unable to pay the taxes due under the authority she had, in view of the corporation's financial condition.

The Court has reviewed the decisions cited by counsel bearing on the issue of who is a "person," within the purview of § 6671(b), with a duty to perform the acts set forth in § 6672. The weight of authority supports the view that such a person is one who has, or shares, the "final word" as to what bills should, or should not be paid, and such person need not be the actual disbursing officer.

United States v. Graham, 309 F.2d 210, 212 (CA 9, 1962); Bloom v. United States, 272 F.2d 215, 222 (CA 9, 1960); Griswold v. United States, 209 F.Supp. 98, 100 (D.C.S.D.Cal.1962); Wiggins v. United States, 188 F.Supp. 374 (D.C.E.D.Tenn., 1960); Sherwood v. United States, 246 F.Supp. 502 (D.C.E.D.N.Y., 1965).

Under the unrebutted testimony of both plaintiff and Mr. Frantz, which was also supported by the testimony of the accountant for the corporation, when plaintiff was hired by Mr. Frantz he gave plaintiff instructions as to the priority of the creditors to be paid. Mr. Frantz instructed plaintiff that his prime concern was to keep the restaurant operating, and that trade creditors were to be paid ahead of all others. Under his instructions, the tax liabilities were to be paid when there was money available to do so.

Plaintiff testified that when funds were available she would purchase depository receipts; when funds were limited she would pay only those trade creditors necessary to keep the restaurant in operation and that the restaurant was in financial difficulty during most of the period she was employed as manager.

Plaintiff further testified that on occasions she would contact Mr. Frantz when there were excess funds available, and he would direct the disposition of such funds. Mr. Frantz's testimony supports plaintiff's statements in this regard. Plaintiff also testified that on some occasions when she would request authority to make payments to Internal Revenue, Mr. Frantz would direct that the available funds be put to other uses.

It was plaintiff's general position, as reflected in the record, that whenever there was money available, and she was permitted to do so, it was paid over to Internal Revenue.

In contravention of this claim, defendant introduced the corporation's bank statements showing the deposits of checks received by the corporation during the relevant period. These statements showed very little variation in income between

those periods when payments were made to Internal Revenue and those when none were made. This was done to establish that funds for the payment of taxes were available.

The difficulty with this evidence is that it reflects only part of the situation as it existed. It does not take into account cash receipts and, more important, it does not include expenses for the period.

The evidence did not establish that during the period under consideration there were adequate excess funds available for the payment of taxes, and the evidence is not sufficient to contravene the testimony and when plaintiff had money available she endeavored to apply it to taxes.

There is no evidence that plaintiff used any of the corporate funds to repay the loans she had made to Mr. Frantz or that she had in any way participated in improper diversion of corporate funds, nor is there any evidence that plaintiff wilfully attempted in any manner to evade or defeat the payment of the tax.

The record further reflects that on two occasions during the relevant period the corporation suffered losses in excess of $1,000.00. One was a flood loss and all available funds were used to refurbish the restaurant, and the other was a burglary. Each of these losses was covered by insurance. Mr. Frantz advised plaintiff that when the insurance checks were received they would be applied to the corporation's debts, including taxes. In each instance, however, Mr. Frantz required plaintiff to turn the checks over to him, and no payment therefrom was applied to the corporation's tax liabilities.

■ On the state of this record the Court finds that plaintiff does not come within the scope of 26 U.S.C. §§ 6671(b) and 6672. Plaintiff's authority was limited to paying bills under the general instructions of her employer. While plaintiff did not have to check with her employer as to payment of a particular bill, she had instructions as to the priorities of classes of creditors, and under such instructions the Internal Revenue was at the end of the list.

■ The Court finds that plaintiff had no authority to pay taxes ahead of trade creditors, and the decision to prefer trade creditors over Internal Revenue originated with her employer, and not with the plaintiff. The Court further finds that there is no evidence that plaintiff on her own accord failed to pay taxes to the Internal Revenue when excess funds were available.

Upon consideration of all the evidence. the Court finds that plaintiff did not "willfully fail to pay the tax," and therefore plaintiff is not liable for the penalty assessed under 26 U.S.C. § 6672.

There is one further aspect of this action which the Court believes should be considered.

It is the Court's opinion that even if plaintiff were amenable to the operation of 26 U.S.C. § 6672, her liability thereunder would be limited to the months of January and February, 1960.

■ Plaintiff made payments to Internal Revenue in excess of the corporation's liabilities for the third quarter of 1959. Internal Revenue applied part of said payments to delinquencies instead of to current taxes. On that state of facts, the Court could not find a willful failure on the part of plaintiff to comply with her statutory obligations for the third quarter of 1959.

■ Plaintiff's employment was terminated in mid-March, 1960. For that month, therefore, plaintiff could not be held responsible for a failure to pay over the withholding taxes. Browne v. United States, 234 F.Supp. 19 (D.C.Minn., 1964). Therefore, if plaintiff had been liable under the statute her liability could be no greater than for the taxes due for the months of January and February, 1960.

Judgment will be entered for plaintiff in the amount of $106.17 with interest from June 5, 1962, and defendant's counterclaim is ordered dismissed. This memorandum opinion is adopted as Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedure.