Ben D. **SPIVAK** and David S. Shapiro, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 62 Civ. 3503.

United States District Court
S. D. New York.
May 2, 1966.

Myron L. Shapiro, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for defendant, Laurence Vogel, Irwin B. Robins, Asst. U. S. Attys., of counsel.

LEVET, District Judge.

This is a controversy concerning so-called "100% penalties" pursuant to Sections 6672, 6671(b), Internal Revenue Code of 1954. The government has made 100% penalty assessments against plaintiffs by reason of allegedly unpaid income withholding and FICA ("social security") taxes due for the first quarter of 1955 and the first quarter of 1956 from Lincoln Industries, Inc., a corporation of which the plaintiffs were officers. Plaintiffs paid what they allege are the taxes due for one employee for each period ($50 and $60, respectively), and sue for a refund of that amount. The government counterclaims for $27,-192.27, the balance of the 100% penalty unpaid.[1]

Trial was to the court without a jury. After hearing the witnesses, studying the exhibits, the briefs, the proposed findings of fact and conclusions of law submitted by the parties, I make the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. At all times here relevant Lincoln Industries, Inc. ("LI") was a Virginia corporation engaged in the manufacture of furniture in the city of Damascus, Virginia. (41;[2] Complaint par. 4; Answer, par. 4)

2. In June, 1954, plaintiff Ben D. Spivak ("Spivak") became Treasurer of LI, a position which he held until May,

---

1. Actually, it appears that $27,202.07 remains unpaid. The counterclaim, however, seeks only $27,192.27.

2. Unless otherwise designated, numbers in parentheses refer to pages of the trial transcript.

1956, when he resigned. (41, 49) Spivak is an accountant and has been such since 1931.

3. In June, 1954, plaintiff David S. Shapiro ("Shapiro") became President of LI, a position which he held until May, 1956, when he resigned. (41, 106-107)

4. LI was adjudicated a bankrupt on July 16, 1956. (Complaint par. 5; Ans. par. 5)

5. In the proceedings in bankrupty of LI the government filed a Proof of Claim for unpaid withholding, FICA, unemployment taxes in the amount of $107,-135.02, including penalties and interest due thereon. (Exs. 1, 2)

6. On February 22, 1960, the Bankruptcy Court approved a settlement of the government's tax claims against LI. The settlement provided for the payment by LI's trustee in bankruptcy of $42,-971.26 to the government. After providing the periods to which the payment should be specifically credited, the settlement went on as follows:

"In consideration of the payments above specified, the United States of America is to assert no further claim for Withholding taxes, FICA taxes, or FUTA [federal unemployment] taxes, penalties, or interest against the bankrupt or its Trustee herein.

"The offer [accepted by the government] is to be without prejudice to the United States in the assessment and collection of any outstanding assessments for penalties against former officers of said Lincoln Industries, Incorporated, on account of said Withholding and FICA taxes."

Due notice of the hearing before the Bankruptcy Court on the settlement was given to plaintiffs here. (25–28; Exs. 1, A)

At the date of the settlement, the trustee had sufficient funds on hand to pay the entire claim of the government. (22, 39; Ex. 4)

7. The penalty sought by the government in its counterclaim is in respect of a portion of the taxes claimed in the bankruptcy proceedings. (Exs. 1, 2, 8)

8. Prior to the time Spivak and Shapiro became officers of LI, a bona fide dispute existed between LI and the Internal Revenue Service ("IRS"). LI claimed that certain payments made by the Reconstruction Finance Corporation ("RFC") to IRS in respect of certain defense contracts of LI should be credited to the tax liabilities of LI, not to the tax liabilities of Virginia-Lincoln Corporation ("Virginia-Lincoln") as they were over LI's objection. (159; Mathis' Dep. p. 13; Exs. 12, 13, 19, 20)

I find that the payments here disputed total $101,558.70, the last of which payments was made at approximately the date at which plaintiffs became officers of LI. (Ex. 19) I find that had this fund been applied to the credit of LI it would have been sufficient, when added to the other payments by LI (even excluding the payments from the bankruptcy proceedings), to pay all LI's taxes of the type here involved (income withholding and FICA) for the entire period of alleged failure to pay, through and including the periods in respect of which the 100% penalties are here sought (first quarter of 1955 and first quarter of 1956), but excluding the second quarter of 1956, not involved herein. (Exs. 1, 2, 8)

9. Spivak and Shapiro learned of this dispute shortly after they took office in June, 1954. (56–64, 108–111) They contacted an attorney "in order to assist us in reapplying these funds properly." (64)

10. The amounts here claimed by the government (withholding and FICA taxes for the first quarter of 1955 and the first quarter of 1956) were not withheld and paid over to the government when due. (117–118; Exs. 8, C, and D)

11. Plaintiffs Spivak and Shapiro were responsible persons whose duty it was to collect and pay over the withholding and FICA taxes here involved.

Spivak and Shapiro were both authorized to sign checks. They also author-

ized two others to sign checks. (106, 112) Both were aware of the financial operations of the business, including the fact that taxes were not being paid over. (84, 111–112, 117–118) Either could have authorized the payment of taxes. (128) Both spent approximately two weeks per month at the plant. (55, 118)

During the period involved in this suit, other bills were paid for raw materials and labor, while taxes remained unpaid. This was pursuant to the direction of Spivak and the approval of Shapiro. (84, 100, 111–112, 117–118, 123, 124, 129, 130) Spivak worked out a plan with each creditor pursuant to which other corporate employees made payments. No payments were made except under these plans. (98–99) After these payments, taxes were paid when money therefor had been accumulated. (84) Spivak ordered and Shapiro approved the above procedure for the payment of taxes and creditors. (111–112) Shapiro continued to order raw materials. (129)

12. Plaintiffs voluntarily, consciously, and intentionally preferred other creditors of the corporation over the United States.

13. Plaintiffs preferred such creditors over the United States in order to keep the business functioning as long as possible. The plaintiffs paid only for labor and materials which they needed for production. The bona fide dispute which existed with the IRS was no part of the reason for their failure to pay over the taxes. Indeed, some taxes were paid over when "sufficient" funds were available. (83, 84, 100–101, 118)

14. On October 2, 1952, Virginia-Lincoln wholly owned LI and another corporation, United Stores, Inc. ("United"). The officers and directors of the three corporations were identical. (189)

Leon BeVille was Vice President and Treasurer of LI, Virginia-Lincoln and United from at least 1951 until some time in 1954. Mr. BeVille's responsibilities were acting for Virginia-Lincoln, United and LI as "the comptroller of the company and operation of the fiscal affairs, taxes and insurance matters." (188–189) He was also a director. He sat in on meetings of the Board of Directors and took part in financial negotiations with IRS and RFC. (202, 204)

15. On October 2, 1952, LI had defense contracts. On the same date Virginia-Lincoln had no defense contracts. (138–142) On October 2, 1952, Virginia-Lincoln owed IRS sums for deficiencies in taxes which amounted to over $600,000. (189–190; Exs. 12, 19)

16. On October 2, 1952, an agreement was entered into between IRS, Virginia-Lincoln and United. (Ex. 12) The agreement is described further in this opinion.

17. At the time the said agreement of October 2, 1952 was entered into, LI needed working capital in order to perform its defense contracts. In order to secure such capital, LI sought a loan from RFC. RFC refused to make such a loan unless some provision were made for the payment to IRS of large outstanding tax liabilities of Virginia-Lincoln, then the parent corporation of LI. RFC was concerned with possible interruption of LI's performance of its contracts due to possible action by IRS due to the tax liabilities of Virginia-Lincoln. The agreement of October 2, 1952 with IRS was entered into as a result of the RFC position. After execution, a copy of the October 2, 1952 agreement was sent to RFC. Thereafter, certain loans were granted by RFC, and LI assigned its defense contract invoices to RFC. (138, 154, 189–192, 203–205; Exs. 12, 19, E, F, G(1), G(2))

18. Paragraph (2) of the said agreement dated October 2, 1952 between IRS, Virginia-Lincoln and United, described further in the opinion, was intended to be effective until the defense contracts referred to therein were completed. The defense contracts referred to therein were LI's defense contracts. (138, 154, 191–192, 203, 205; Exs. 12, E, F, G(1), G(2))

19. Plaintiffs have failed to sustain the burden of proving by a fair preponderance of the credible evidence that the assessments against them are erroneous.

20. Plaintiffs have failed to sustain the burden of proving by a fair preponderance of the credible evidence that the sums they paid were in fact the taxes due for one employee for each quarter here involved. (70–73, 119)

## DISCUSSION

Section 3101, Internal Revenue Code of 1954, provides in pertinent part that in addition to other taxes there shall be a tax on the wages of employees. This tax is the Social Security (FICA) Tax. Section 3102 requires the employer to collect the tax imposed by Section 3101 by withholding it from the wages of the employee. Section 3402, Internal Revenue Code of 1954, requires employers making payment of wages to deduct and withhold from such wages a percentage of the wages as income tax withheld at the source. Section 3403 makes the employer liable for the payment of the withheld income tax.

This suit revolves around the provisions of Section 6672, Internal Revenue Code of 1954. That section provides:

"§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

Section 6671(b) defines "person" as follows:

"(b) Person defined.—The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

Plaintiffs Spivak and Shapiro have paid fifty and sixty dollars respectively to the United States, and now sue for a refund. The government counterclaims for over twenty-seven thousand dollars, the unpaid amount of 100% penalty assessments.[3]

Preliminarily, the government challenges this court's jurisdiction over the subject matter of plaintiffs' complaint. Plaintiffs have purported to act pursuant to 28 U.S.C. § 1346(a) (1) and Steele v. United States, 280 F.2d 89 (8th Cir. 1960). This case held that the taxes involved herein are "divisible" taxes, and that in a suit such as the instant one the tax due for a single employee for one period might be paid and an action maintained for a refund of just that amount. The government does not question this doctrine, but does question whether plaintiffs have proved the presence of even these jurisdictional facts.

After a close study of the record, I conclude that I must dismiss plaintiffs' complaint for lack of jurisdiction over the subject matter. While plaintiffs have proved that they paid fifty and sixty dollars, respectively, they have wholly failed to prove the amount of the tax due for one employee for one quarter involved herein. Since proof that plaintiffs have paid the amount of tax due for one employee for one period is absent, plaintiffs have not shown facts necessary to the subject matter juris-

---

3. The government has deducted from the amount sought in the counterclaim the fifty and sixty dollar payments made by plaintiffs, as well as certain other payments for which refund is not sought.

diction of this court, and I hold that their complaint must be dismissed.[4]

■ The next question becomes, then, whether the court retains subject matter jurisdiction over the counterclaim. It is well settled that, although the complaint be dismissed, jurisdiction over the counterclaim may be retained when it seeks affirmative relief and an independent basis of federal subject matter jurisdiction exists. See Switzer Bros., Inc. v. Chicago Cardboard Co., 252 F.2d 407 (7th Cir. 1958); Isenberg v. Biddle, 75 U.S.App.D.C. 100, 125 F.2d 741 (D.C.Cir. 1941); 3 Moore, Federal Practice, ¶13.15 (2d ed. 1964). The counterclaim here seeks affirmative relief. An independent basis of federal jurisdiction exists. 28 U.S.C. §§ 1340, 1345, 1346; 26 U.S.C. §§ 7401, 7402, 7403(a). See, e. g., United States v. Harris, 223 F.Supp. 309 (S.D.Fla.1963), aff'd per curiam 337 F.2d 856 (5th Cir. 1964). I conclude that the court has subject matter jurisdicion over the counterclaim by the government and I proceed to determine that counterclaim on the merits.

Certain of the questions relating to the liability of Spivak and Shapiro on the counterclaim have been determined in the Findings of Fact. Three legal questions remain to be dealt with.

■■ First, I adopt the definition of "willful" contained in Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. denied 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960), a case under the predecessor of present Sections 6672 and 6671(b). It was there said:

" * * * In our view there need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions of [the predecessor of Section 6672]. The decision of appellant as the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes was a voluntary, conscious and intentional act to prefer other creditors of the corporation over the United States. In our view such conduct was willful within the meaning of [the predecessor of Section 6672]. * * *" Bloom v. United States, 272 F.2d at 223.

This test was approved in this circuit in Horwitz v. United States, 339 F.2d 877 (2nd Cir. 1965), affirming per curiam Horwitz v. United States, 236 F.Supp. 812 (S.D.N.Y.1964). Moreover, this definition of "willful" comports with the statutory scheme.

■ With respect to certain taxes, the taxpayer may refuse to pay, wait for an assessment of deficiency by the IRS, and then petition the Tax Court for review. Payment of the tax in those cases is not necessary in order to secure review of the question of liability for such taxes. However, the situation is different with respect to the taxes here in question. For it now seems settled that in the case of withholding and social security taxes, Tax Court review is unavailable. The tax must be paid and a refund sought.[5] Thus, the above definition of "willful" does not deprive the corporation of any right to refuse to pay and then seek Tax Court review, because such review is not permitted by the Internal Revenue Code. See Enochs v. Green, 270 F.2d 558 (5th Cir. 1959); Shaw v. United States, 331 F.2d 493 (9th Cir. 1964); 26 U.S.C. § 7442; Treas. Reg. § 601.102; 9 Mertens, Federal In-

---

4. Even if I reached an opposite conclusion on jurisdiction, however, the discussion below with respect to the counterclaim would determine all issues with respect to the claim for refund, as all issues on the merits are identical.

5. Since the corporation did not pay the tax due for one employee for one period and then sue for a refund, I need not decide what effect such action would have on the responsibility of the corporation to continue to pay over the remaining taxes, or on possible 100% penalties of responsible employees therefor.

come Taxation, § 50.08 (1965 rev.). Cf. Enochs v. Williams Packing Co., 370 U.S. 1, 2, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).[6] Current payment is an important interest protected. In short, even a bona fide dispute as to liability would not provide a release from the duty to collect and pay over these taxes, or insulate from liability for 100% penalties the responsible corporate officers.[7] In addition, here, of course, the bona fide dispute was not the proximate cause of the failure to collect and pay over.

The second question is the effect of the settlement and release entered into by the government in the bankruptcy proceedings. The plaintiffs urge that their liability is secondary only and that, on general principles of suretyship law, they are released since their principal has been released. Therefore, they argue, the government may not assert this claim. I have concluded otherwise.

■■ A number of cases have held that liability under Section 6672 (or its predecessor) is a liability separate and distinct from that imposed upon the employer by other sections of the Code. It was so held in Bloom v. United States, supra, 272 F.2d at 219–221 (for assessment and statute of limitations purposes) and in Rosenberg v. United States, 327 F.2d 362, 364–365 (2nd Cir. 1964) ("utterly separate statutory liability;" for assessment and statute of limitations purposes). It was so held as well in United States v. Molitor, 337 F.2d 917, 924 (9th Cir. 1964) (for statutory burden of proof purposes). The liabilities imposed by these statutory provisions have

generally been considered separate and distinct. I am able to discern no reason why they should not be so considered here for this purpose.[8] The government should be able to enter into a compromise with the bankrupt taxpayer and effectively reserve its rights against responsible corporate officers under the separate 6672 statute. Indeed, it has been held that the government need not even seek to reach existing corporate assets, but may proceed against the officers under Section 6672 irrespective of them. Cash v. Campbell, 346 F.2d 670 (5th Cir. 1965).[9] Since the government has sought to recover in the present action only penalties in the sum of taxes claimed to have been due but never actually received from the employer, I need not decide whether the statutes are so independent as to allow both recovery of the 100% penalty and the full amount of the tax from the corporation. See United States v. Mr. Hamburg Bronx Corp., 228 F. Supp. 115 (S.D.N.Y.1964). I hold that the reservation contained in the settlement agreement is here effective.

■ The third question which must be dealt with here is whether those against whom 100% penalties have been assessed may litigate at this juncture the employer's underlying liability for the taxes in respect of which the penalties have been assessed. I believe that such underlying liability may be litigated in this action.

In United States v. O'Connor, 291 F.2d 520 (2nd Cir. 1961), a suit like the instant one to reduce an assessment to judgment, it was held that the defendant

---

6. In a very rare case, however, an injunction might lie to restrain collection of the tax. *Compare* Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 517 (1932) *with* Enochs v. Williams Packing Co., *supra*.

7. I exclude from this statement, of course, the situation referred to in footnote 6, supra. With respect to the issue raised in footnote 5, I again need express no opinion here.

8. The legislative history of this section sheds little additional light on the point

in question. A statute similar in form to the present one was apparently first enacted as Section 1308(c), (d) of the Revenue Act of 1918, 40 Stat. 1057, 1143. See S.Rep. 617, 65th Cong., 3rd Sess., p. 18. The subsequent legislative history is of little help.

9. The existence of any right to indemnity in such a situation is greatly to be doubted. Thus, plaintiffs' suretyship analogy is quite strained here.

could go behind the assessment and attack the assessment on the underlying merits. It was there said that "when the Government seeks the aid of the courts in enforcing the assessment in any form, it opens the assessment to judicial scrutiny in all respects." 291 F.2d at 527 (per Friendly, J.).[10] This seems to mean, then, that in spite of the interest in current payment which the statutory scheme exhibits, the person against whom a penalty assessment is made may still prevail, if, in fact, no underlying tax was due. A mere *dispute* as to liability for the taxes here in question should not immunize the officers from liability due to a "reasonable cause" test for statutory willfulness, since the corporation, through these officers, still has the responsibility to pay over currently and sue for a refund later. Such a test would always insulate the officers from penalty assessment in case of a dispute, when it was their duty to have the corporation pay over currently. Nevertheless, when the officers choose to do nothing and wait until 100% penalty assessments are made against them, the underlying liability of the employer may still be litigated at that time.

One case only dealing with a situation close to the specific situation alleged here has been found. It supports the above conclusion. In Cellura v. United States, 245 F.Supp. 379 (N.D.Ohio 1965), 100% penalty assessments under Sections 6672, 6671(b) were made against plaintiff. She paid a portion thereof and then brought suit for refund. The government counterclaimed for the balance of the 100% penalty assessment. The court held that plaintiff did not willfully fail to pay the tax for the quarters involved.[11] Alternatively, the court held that, even if the penalty assessment section be held to apply to the plaintiff, nevertheless, she could be liable for only a portion of the penalty asserted against her. This was so because in spite of contrary instructions, IRS had for certain periods mis-

applied to delinquencies the funds paid over for current liabilities of the same tax. Thus, the employee was allowed to assert a claim which, strictly speaking, belonged to the employer-corporation. I proceed, then, to the question of the underlying liability.

In United States v. Lease, supra, the burdens here involved were summarized as follows:

"* * * Thus, overall, the Government has the burden of coming forward and persuading the trier that the taxpayer has or had a tax liability. If not challenged the assessment establishes that liability. A taxpayer's challenge must persuade the trier by a preponderance of the evidence that the assessment is erroneous. The Government then must still persuade the trier that on the basis of all the evidence there was a tax liability—perhaps in a different amount than initially asserted—for which the taxpayer was responsible. * * *" (footnote omitted) United States v. Lease, 346 F.2d at 701.

As I stated in the Findings of Fact set out above, plaintiffs have not sustained their burden of proving by a preponderance of the credible evidence that the assessments put in evidence by the government are erroneous. Plaintiffs' main attack is based upon an alleged misapplication of funds by IRS. I am not convinced that any such misapplication took place.

Plaintiffs placed in evidence an agreement between IRS, Virginia-Lincoln and United, dated October 2, 1952 (Ex. 12). The agreement in part provided:

"It is agreed that the income tax and excess profits tax accounts owed by the United Stores, Inc., Marion, Virginia, for the years 1941 to 1946, inclusive, which amount to $15,099.93, plus interest, and the income and excess profits tax account owed by the Vir-

10. Cf. United States v. Lease, 346 F.2d 696 (2nd Cir. 1965).

11. It would seem that the court also held that plaintiff was not a responsible person under Section 6671(b). See discussion, 245 F.Supp. at 381–382.

ginia Lincoln Corp., Marion, Virginia, for the year 1945 which amounts to $602,899.37 will be liquidated as follows:

"(1) A minimum payment of $5,000.00 per month will be made on or before the 1st. day of each month for a period of six months, beginning December 1, 1952;

"(2) The R.F.C. will be authorized to pay over to the Director of Internal Revenue 8% of the amount of each of the defense contracts upon the completion of each contract * * *."

The agreement also went on to provide:

"(3) It is agreed that an assignment be made, subject to the existing assignment, to the Director of Internal Revenue of all interest the corporations may now have, or acquire, in insurance policies carried on the lives of the officers which have an aggregate maturity value of approximately $1,300,000.00 to secure the Government's claim until such time as the aforementioned accounts are paid;

"(4) On or before June 1, 1953, we will meet with representatives of the office of the Director of Internal Revenue and review with them the financial status of the corporations as of that time and make a new agreement with respect to the liquidation of the balance due.

"(5) All future tax returns will be filed timely and the tax shown thereon will be paid when due.

"It is understood that in the event of default in any of the above stipulations, notice of tax liens will be filed immediately and the entire balance plus accrued interest will become due and payable and may be collected by levy and/or distraint, without further notice. Notice of tax liens will also be filed upon the institution of bankruptcy proceedings whether voluntary or involuntary, except as set forth in this paragraph no liens will be filed against these parties hereto on or before June 1, 1953."

It was executed for United and Virginia-Lincoln by Leon BeVille as Vice President and Treasurer. His position in LI, as well as in the other companies, was described in the Findings of Fact above.

I cannot say from the four corners of the agreement that it is clear and unambiguous that paragraph (2) thereof was to terminate on June 1, 1953, as plaintiffs urge. Nor can I say from the same document that it is beyond question that payments from RFC upon completion were to extend beyond June 1, 1953. I must, therefore, consult additional evidence with regard to the intention of the parties in this matter. Cf. Union Insurance Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946 (2nd Cir. 1965).

As set out in the Findings of Fact, at the time the said agreement was entered into LI had certain defense contracts which it needed working capital to perform. In order to secure such capital, LI sought a loan from RFC. RFC refused to make such a loan unless some provision were made for the payment to IRS of large outstanding tax liabilities of Virginia-Lincoln, then the parent corporation of LI. RFC was stated to be concerned with the possible interruption of LI's performance of the contracts due to possible action by IRS due to the tax liabilities of Virginia-Lincoln. The agreement of October 2, 1952 with IRS was entered into as a result of the RFC position. This background casts considerable doubt in my mind on the proposition that in entering into the agreement with IRS it was contemplated by the officers of the corporation (all of whom were identical) that paragraph (2) was to expire on June 1, 1953. On the contrary, such an arrangement would not seem to satisfy RFC's fears in respect of existing defense contracts, which might or might not be completed by June 1, 1953.

Moreover, a series of letters to RFC, signed by Mr. BeVille, further demonstrates that it was contemplated that paragraph (2) was a continuing obligation. I have set forth the relevant portions of these letters in the Appendix to

this opinion. These letters indicate to me that the contemporaneous construction given by Virginia-Lincoln and LI, through Mr. BeVille, their Vice President and Treasurer, to paragraph (2) of the agreement was that it continued in effect for the life of the defense contracts. (Exs. E, F, G(1), G(2))

Further, when the meaning of paragraph (2) was first posed to the government, the man who had prepared the agreement for the government stated in effect that he understood paragraph (2) to be a continuing provision. (208–217)

The existence of a document (Ex. 20), dated June 30, 1953, executed by Virginia-Lincoln but never executed by IRS, does not conflict with this construction. The document purports to make certain modifications in the arrangements for liquidating the tax liability of Virginia-Lincoln. It is true that the document in effect restates paragraph (2) of the October 2, 1952 agreement. But this is just one factor to be considered in determining the question of intent. It is not determinative.

 After closely examining all the documents and the testimony in this case, I believe that the intention of the parties to the October 2, 1952 agreement was that paragraph (2) thereof continue in effect until the completion of the defense contracts referred to therein. It is uncontested that the payments made by RFC to IRS, which are here in question, were the proceeds of just such defense contracts. Nor can I say that there would be a lack of consideration for this arrangement merely because IRS promised to file no tax liens only until June 1, 1953. A contention of lack of authority to bind LI must also be rejected, when all officers and directors of the corporations were identical and Virginia-Lincoln wholly owned LI.

All in all, in view of the behavior of the parties described above, plaintiffs have clearly failed to prove by a preponderance of the credible evidence that any misapplication of funds took place. They have failed to sustain their burden of proving that the assessments against them are erroneous.

CONCLUSIONS OF LAW

1. Plaintiffs' complaint must be dismissed for lack of jurisdiction over the subject matter. 28 U.S.C. § 1346(a) (1).

2. An independent basis of jurisdiction over the subject matter exists for defendant's counterclaim. 28 U.S.C. §§ 1340, 1345, 1346; 26 U.S.C. §§ 7401, 7402, 7403(a).

3. Plaintiffs each willfully failed to collect and pay over a total of $27,192.27 in withholding and social security taxes due for the first quarter of 1955 and the first quarter of 1956 while it was the duty of each to so collect and pay over such taxes. 26 U.S.C. §§ 6672, 6671(b).

4. Defendant is entitled to judgment on its counterclaim against plaintiffs in the sum of $27,192.27, plus interest and costs.

Settle judgment on notice.

APPENDIX

The first of the letters relevant herein (Ex. G(2)) is dated June 24, 1953, a date shortly after the date upon which plaintiffs urge that paragraph (2) of the agreement of October 2, 1952 expired. The letter is on the stationery of Virginia-Lincoln, and is as follows:

June 24, 1953

Reconstruction Finance Corporation
Lincoln-Liberty Building
Broad and Chestnut Streets
Philadelphia 7, Pennsylvania
Gentlemen:

Reference is made to our agreement with the Director of Internal Revenue dated the 2nd day of October 1952 and more particularly item 2 which reads "The R.F.C. will be authorized to pay over to the Director of Internal Revenue 8% of the amount of each of the defense contracts upon the completion of each contract;"

Under our arrangement with you these funds were to be impounded until completion of the various contracts covered under the loan. Funds have been

impounded under this arrangement for the benefit of the Director of Internal Revenue.

We feel that this is working a hardship in that we are paying interest on monies to the Director of Internal Revenue which could be alleviated if these monies could be released to them.

We would appreciate it if you would review this to see if it would not be possible to change the wording "completion of contract" to "completion of purchase order". We believe this would enable you to release the funds to the Director of Internal Revenue more rapidly.

Your response would be personally appreciated.

> Yours very truly,
> VIRGINIA - LINCOLN
> CORPORATION
> (Sgd) Leon D. BeVille
> Leon D. BeVille
> Treasurer

The second letter (Ex. G(1)) is dated July 16, 1953. It is on LI's stationery. It reads in relevant part as follows:

> July 16, 1953

Reconstruction Finance Corporation
Lincoln-Liberty Building
Broad and Chestnut Streets
Philadelphia 7, Pennsylvania

> Attention—Mr. Davis

Gentlemen:

> \* \* \* \* \* \*

After getting back home and consulting our legal counsel we are more convinced than ever that we were on the right track in our discussion which was furthered by our telephone call today. As pointed out, except for the impounding of the 8% for the benefit of the Director of Internal Revenue, we cannot see how our collateral could possibly get off balance. As we see it, when we make assignment of invoices and draw funds from the general fund, the 8% is provided. Even in your cash reserve fund, after providing 8% for the benefit of the Revenue Department, there is still an equity of 17%, which would carry us along for quite some time without unbalancing the collateral structure.

> \* \* \* \* \* \*
> Yours very truly,
> LINCOLN INDUSTRIES,
> INC.,
> (Sgd) Leon D. BeVille
> Leon D. BeVille
> Treasurer

The third letter (Ex. E) is dated September 25, 1953. It is also on LI stationery and reads in relevant part as follows:

> September 25, 1953

Reconstruction Finance Corporation
11th Floor of Commercial Trust
 Bldg.,
15th and Market Streets
Philadelphia 2, Pennsylvania

> Subject—Virginia-Lincoln Corporation, Lincoln Industries, Inc., and United Stores, Inc., Marion, Virginia, LBE – D – 600504

Gentlemen:

> \* \* \* \* \* \*

When the borrowers made the application for the above loan, they were indebted to the Bureau of Internal Revenue in the approximate amount of $600,000.00 of principal and interest accumulated over a period of years. Accordingly, an agreement was made with the Director of Internal Revenue, (Richmond Office), for the retention by Reconstruction Finance Corporation of 8% of the amounts collected by Reconstruction Finance Corporation on the assigned contracts, which are part of the collateral for the second note.

As of September 20, 1953, there has accumulated in the hands of Reconstruction Finance Corporation approximately $60,000.00 which is held for the Director of Internal Revenue under the above mentioned agreement. In the Internal Revenue agreement, it was stipulated that these amounts would be paid over to the Director of Internal Revenue on each assigned contract as its performance was "completed". It

now develops that instead of making new contracts on some items involved, the Government has issued amendments so that the time for ultimate completion of such contracts has been indefinitely extended. Accordingly, the borrowers find themselves with approximately $60,000.00 held by Reconstruction Finance Corporation for the account of the Bureau of Internal Revenue, while at the same time, the borrowers are paying the Internal Revenue Bureau, 6% interest on an equivalent amount of past due taxes. Likewise, the borrowers are paying the Reconstruction Finance Corporation 5% interest on an equivalent amount of money.

\* \* \* \* \* \*

> Yours very truly,
> LINCOLN INDUSTRIES,
> INC.,
> (Sgd) Leon D. BeVille
> Leon D. BeVille
> Treasurer.

The letter was signed also by C. Robert Mathis, Attorney for Borrowers.

Finally, Exhibit F was written on January 27, 1954. Also on LI stationery, it provided in relevant part:

> January 27, 1954

Reconstruction Finance Corporation
Commercial Trust Building
Philadelphia 3, Pennsylvania

> Re: Lincoln Industries, Inc.
> Your Letter December 31,
> 1953

Gentlemen:

\* \* \* \* \* \*

We restate our request of September 25, 1953, that the RFC pay over to Internal Revenue Bureau, Richmond Office, all amounts collected by RFC on the assigned contracts under the subject loan as we are obligated to pay the Internal Revenue Bureau 6% on said sums during the entire period of time they are withheld by RFC. We feel that without question and without delay these funds should be promptly re-

mitted to the Internal Revenue Bureau, Richmond Agency.

\* \* \* \* \* \*

> Very truly yours,
> LINCOLN INDUSTRIES,
> INC.
> (Sgd) Leon D. BeVille
> Leon D. BeVille
> Vice President