**Edward J. BLOOM, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16127.**

United States Court of Appeals
Ninth Circuit.

Nov. 2, 1959.

Rehearing Denied Jan. 20, 1960.

James W. Harvey, San Francisco, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., C. Guy Tadlock, Lee A. Jackson, A. F. Prescott, Joseph Kovner, Attorneys, Department of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This is an appeal from a judgment against an officer of a corporation for the amount of income taxes and social security taxes withheld from wages of employees of the corporation but not paid over to the United States.

Jurisdiction was conferred on the district court by Title 28 U.S.C.A. § 1345. This Court has jurisdiction under the provisions of Title 28 U.S.C.A. § 1291.

The action was predicated on Section 2707(a) and Section 2707(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 2707(a, d).[1] This section applies to social security taxes and withholding taxes by virtue of Sections 1430 and 1627 respectively of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 1430, 1627.

Appellant Edward J. Bloom, a licensed metallurgist, entered the aluminum smelting business in 1945 at the conclusion of his wartime service in the Navy. He formed and operated at that time the Idaho Company, an individual proprietorship, for the purpose of purchasing wrecked aircraft (chiefly from the War Assets Administration), making aluminum alloy ingots from the scrap, and sell-

1. "§ 2707. Penalties

"(a) Any person who willfully fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700 (a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penalty may be assessed under authority of section 3612.

\* \* \* \* \*

"(d) The term 'person' as used in this section includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

ing the ingots to foundries. To finance the operation of the Idaho Company, appellant relied on his own funds and those of friends and also borrowed extensively from the Seattle Trust and Savings Bank. During 1945 and 1946 the scrap aluminum business was extremely profitable. The business was incorporated in the State of Washington on or about July 1, 1946 as Idaho Smelting, Inc. All assets of the Idaho Company were transferred to Idaho Smelting, Inc. Certain preferred stock was issued to persons who had individually lent money to appellant for his business, and 898 out of 900 shares of common stock were issued to appellant, who became president and chief executive officer of the new corporation.

Upon the formation of Idaho Smelting, Inc., the financing bank agreed to make the same financing arrangements with the corporation as had existed with the sole proprietorship, and with the adoption of the necessary corporate resolution, this was done. The agreement provided for the extension of credit up to the sum of $849,000, but the maximum ever extended was approximately $700,000. The terms of the financing agreement extended credit on an overdraft system of lending (sometimes referred to as the Canadian style of banking), and required the corporation to buy and sell aluminum on a trust receipts basis.

In September of 1947 the metal market dropped drastically. There was no longer a shortage of metal. Foundries did not want to stock large amounts, and Idaho Smelting, Inc. was left holding a large inventory for which there was no immediate demand. The organization remained in business, however, hoping to weather out the storm. Since the corporation was not making large sales, it could not meet its obligations to the bank promptly.

On or about January 20, 1948, the bank informed appellant by letter that "We are not at all satisfied with the progress which is being made to place the account of Idaho Smelting, Inc. on a satisfactory basis," and gradually exerted pressure on the company to liquidate its inventory so as to insure that the bank would not suffer a loss on its loans. On January 31, 1948, when the corporation filed a tax return for the last quarter of 1947, for the first time it failed to include payment for the withheld income and social security taxes of that quarter. Throughout the remaining months of 1948, as the corporation continued to liquidate its inventory to satisfy the bank's demands, employees were paid a net amount excluding the withheld income and social security taxes, but none of the withheld taxes (with the exception of two quarters' social security taxes) were ever paid to the United States. Returns without payment were filed quarterly. The government assessed the delinquent taxes against the corporation for each quarter.[2] In July, 1948 tax liens were filed against the corporation by the government.

Many of the creditors of the corporation were induced to accept debenture bonds in place of their open account claims against the corporation, and bonds aggregating $106,000 in amount were issued, with the bank as trustee and paying agent for the coupons. By the middle of July, 1948, virtually all major creditors of the corporation had accepted debenture bonds. By December 31, 1948, with the liquidation process completed, all indebtedness to the bank had been discharged, and the corporation was practically without funds. There were then no paid employees of the corporation. For all practical purposes the corporation was dead. Loans were sought from other banks, but primarily because of the outstanding tax liens filed against it, the corporation was unable to procure them.

On November 23, 1949, the Commissioner of Internal Revenue assessed against appellant and his wife certain taxes, aggregating $13,448.45, which represented the amount of delinquent withheld taxes originally assessed against the corporation, under the theory that they were "persons who had willfully failed to pay, collect, or truthfully ac-

2. The last assessment against the corporation was made May 17, 1949.

count for and pay over" said withheld taxes. Notice and demand for payment was made. Warrants of distraint were issued, and tax liens were filed against them. Payment was refused, appellant and his wife contending that they did not willfully fail to pay the corporation's taxes, and that they were not the persons required to pay, collect, or truthfully account for and pay over the same. This action was brought on November 18, 1955, to reduce to judgment the above unpaid assessment. The trial court, without a jury, held that there was no evidence as to Mrs. Bloom's liability for the taxes, and rendered judgment in her favor. The trial court also held that "The defendant Edward J. Bloom was the responsible officer of the Idaho Smelting, Inc. whose duty it was to collect, account for and pay over to the Internal Revenue Service the withholding and F.I.C.A. taxes of Idaho Smelting, Inc." and concluded that "The defendant Edward J. Bloom willfully failed to collect, account for and pay over the withholding taxes of Idaho Smelting, Inc. for the fourth quarter of 1947 and the first, second, third and fourth quarters of 1948" and "The defendant Edward J. Bloom willfully failed to collect, account for and pay over the F.I.C.A. taxes of Idaho Smelting, Inc. for the fourth quarter of 1947, first quarter of 1948 and fourth quarter of 1948."

On the basis of the findings of fact and conclusions of law, the trial court entered judgment for the United States against appellant for $19,292.79.

On this appeal appellant presents four contentions. They are:

First, that since the suit to reduce to judgment the assessment made against him was commenced almost seven years after the assessments had been duly made against the corporation, whatever claim the government may have against him individually has become outlawed under Section 3312 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3312,[3] which requires a suit to reduce an assessment to judgment to be commenced within six years of the date of the assessment.[4]

Second, that since Section 2707(a) provides for a "penalty", the assessment of that penalty was without due process of law, was an arbitrary and capricious exercise of the taxing power and consequently constituted a violation of Amendments V, VII and VIII of the United States Constitution.

Third, that the trial court erred in holding that he was the responsible officer whose duty it was to collect, account for, and pay over the withheld taxes.

Fourth, that the trial court used an improper definition of "willfully" in concluding that appellant willfully failed to pay over and collect the said taxes.

Under the first contention, appellant argues that the tax sought to be collected from the corporate officer is the same tax sought to be collected originally from the corporation, and that, therefore, the government's claim is only that of a secondary liability against the officer. Hence he claims that when the primary

3. "§ 3312. Period of limitation upon assessment and collection.

"(a) General rule. All internal revenue taxes shall (except as provided in subsections (b), (c), and (d)) be assessed within four years after such taxes became due, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of five years after such taxes became due.

"(d) Collection after assessment. Where the assessment of any tax imposed by this title has been made within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun—

"(1) Within six years after the assessment of the tax, or

"(2) Prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer."

4. Sec. 7851 of the 1954 Code, 26 U.S.C.A. § 7851 provides that the 1939 Code limitations shall govern actions for taxes imposed thereunder.

claim against the corporation is barred, the secondary claim against the officer is also barred. Appellant does not claim that the assessments made against the corporation and the assessment made against him were not made within the time specified by Section 3312(a), supra. Appellant's only assertion is that this suit was not brought within the six-year period specified in Section 3312 (d) supra after the date of the assessments against the corporation. As the assessment against appellant was made November 23, 1949 and suit was filed on November 18, 1955, appellant must and does concede that the suit was filed within six years after the assessment against him.

■■■■ Section 1622 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1622 [5] provides for the collection of income taxes at source by requiring every employer to deduct and withhold a percentage of the wages paid to the employees. Section 1627 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1627 [6] makes Section 2707(a) applicable to the collection of this tax. Similarly, Section 1400 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1400 [7] imposes a tax on wages of employees as a contribution to their insurance under the social security, old age and survivors program. Section 1401 of the Revenue Code of 1939, 26 U.S.C.A. § 1401 [8] imposes the duty to collect this tax upon the employer by deducting the amount of the taxes from the wages as and when paid. Section 1430 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1430 [9] makes Section 2707(a) applicable to the collection of this tax. Where the employer has collected the tax but failed to pay it over to the United States, the employee is credited with payment, since the amount was deducted from his wages by the employer. United States Fidelity & Guar-

5. Sec. 1622. Income Tax Collected at Source.
"(a) [as added by Section 2(a) of the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126 and amended by Sec. 501, Revenue Act of 1948, c. 168, 62 Stat. 110, 64 Stat. 921, 65 Stat. 474] **Requirement of withholding.** Every employer making payment of wages shall deduct and withhold upon such wages a tax equal to 18 per centum of the amount by which the wages exceed the number of withholding exemptions claimed multiplied by the amount of one such exemption as shown in subsection (b) (1), except that in the case of wages paid on or after November 1, 1951, and before January 1, 1954, the tax shall be equal to 20 per centum of such excess in lieu of 18 per centum."

6. Sec. 1627. [as added by Section 2(a) of the Current Tax Payment Act of 1943, supra]
Other Laws Applicable.
"All provisions of law, including penalties, applicable with respect to the tax imposed by section 1400 shall, insofar as applicable and not inconsistent with the provisions of this subchapter, be applicable with respect to the tax under this subchapter."

7. Sec. 1400 [as amended by Sec. 1 of Social Security Act Amendments of 1947, c. 510, 61 Stat. 793]

Rate of Tax.
"In addition to other taxes, there shall be levied, collected, and paid upon the income of every individual a tax equal to the following percentages of the wages (as defined in section 1426(a)) received by him after December 31, 1936, with respect to employment (as defined in section 1426(b)) after such date:
"(1) With respect to wages received during the calendar years 1939 to 1949, both inclusive, the rate shall be 1 per centum."

8. Sec. 1401. Deduction of Tax From Wages.
"(a) Requirement. The tax imposed by section 1400 shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid."

9. Sec. 1430. [as amended by Sec. 903, Social Security Act Amendments of 1939, c. 666, 53 Stat. 1360].
Other Laws Applicable.
"All provisions of law, including penalties, applicable with respect to any tax imposed by section 2700 or section 1800, and the provisions of section 3661, shall, insofar as applicable and not inconsistent with the provisions of this subchapter, be applicable, with respect to the taxes imposed by this subchapter."

anty Co. v. United States, 10 Cir., 1952, 201 F.2d 118. In our view, Section 2707 (a) imposes a separate and distinct liability upon the officer of the corporation who has the duty or is responsible for the collection and payment of the tax and who willfully fails either to collect the tax or to pay it over. While this liability is denominated "penalty" it is "to be assessed and collected in the same manner as taxes are assessed and collected." While it might be said that the assessment made on appellant is derivative of the assessments made on the corporation, in that they both relate to taxes collected or withheld by the corporation, the liability imposed upon appellant by Section 2707(a) is statutory and in such cases the statutory limitations are controlling.

In urging that suit must be filed within six years after the date of assessment against the corporation, the appellant relies heavily upon United States v. Updike, 1930, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984. This case is readily distinguishable from the instant case. The distinction was pointed out in Signal Oil & Gas Co. v. United States, 9 Cir., 1942, 125 F.2d 476, 482, where this Court stated:

> "The Updike case, so cited and approved by the Supreme Court, was a suit against a transferee after assessment of the taxpayer, but without an assessment of the transferee. The applicable statute was held to be section 278(d) providing the six-year limitation after the assessment of the taxpayer and the suit against the unassessed transferee was held brought too late because commenced over seven years after the taxpayer's assessment."

The present action is not one against a transferee of property of an original taxpayer, nor is it one solely of derivative character. Rather, it is one of distinct and separate statutory liability. The fact that the suit was brought more than six years after the assessments against the corporation is immaterial. We hold that since the suit was filed within six years after the assessment against the appellant that it was timely instituted.

■ Appellant's second contention is predicated entirely on the assumption that he has been held liable for the assessed taxes solely on the basis of the Commissioner's ex parte assessment. His argument in this respect reads as follows:

> "If the assessment is deemed to be duly made and to establish a prima facie case against the defendants, obviously it is an arbitrary and capricious exercise of the taxing power, and as such constitutes a violation of Amendment V of the Constitution of the United States, which provides that no person shall be deprived of property without due process of law. Likewise, such a summary determination appears to deprive defendants of a jury trial, to which they are entitled by Amendment VII of the Constitution. And, furthermore, such an assessment appears to violate the provisions of Amendment VIII of the Constitution, which provides that excessive fines shall not be imposed, nor shall cruel and unusual punishments be inflicted."

Appellant's argument is without merit since it completely overlooks the fact that he has been held liable not on the basis of an ex parte assessment but on the basis of a court judgment. That judgment applied Section 2707(a) and (d) to him on all of the facts of the case, at the close of all of the evidence, including the assessment as one factor. Appellant has raised no constitutional objection to the judicial proceedings which resulted in the judgment imposing liability upon him.

Under appellant's third contention that the trial court erred in finding that he was the responsible officer of the corporation, appellant urges: (a) that he was traveling most of the time and away from the corporation's principal office; that he was not in charge of the admin-

istrative affairs of the corporation; that subordinates were in charge of the principal office and exercised the functions of general manager, and were also authorized to sign checks of the corporation; and that the corporation employed a bookkeeper and accountants, and appellant relied upon them insofar as the financial records and tax returns of the corporation were concerned; and (b) that the bank financing the corporation was in control of the corporation's finances from its inception, and dictated what disbursements should be made, and that it was the decision of the bank and not appellant in 1948 not to pay the withheld taxes.

Appellant was the founder of the corporation, was virtually its sole stockholder, and was its president and chief executive officer. There was testimony from the vice-president of the corporation that appellant was in charge of the entire operation, that he made the final decisions, and that he decided what creditors were to be or were not to be paid.

Bank officers testified that the bank never declined to authorize the issuance of checks to pay taxes; that the relation between the bank and the corporation was a normal one; that the bank did not interfere with the management of the corporation; and that the corporation was free to draw on its account to the extent that it had funds in the bank. Appellant's own testimony indicates that the corporation had funds in the bank in amounts in excess of the taxes due, but they were admittedly used to pay other bills. The record discloses that the appellant knew in January of 1948 that the taxes for the fourth quarter of 1947 were due; that they were not paid; that throughout 1948 the corporation continued to operate; that he decided to file

returns without making payment of the taxes due because his attorney advised him that the returns must be filed even if the taxes due were not paid; that appellant continued to put money into the business; that he persuaded other creditors to accept debentures subordinate to taxes, expecting the business to pull out of its distress; that subsequent to the termination of the relationship with the allegedly interfering bank some corporate money was used to pay interest on the debenture bonds and to reduce the mortgage on the corporation's real property. While much of this money may have come from appellant's own funds, he conceded that some came from corporate funds.

Appellant's argument that subordinate officers in the corporation were in charge of the administrative and managerial activities of the corporation, and that, therefore, the trial court erred in finding that he was the responsible officer, is disposed of by this Court's recent decision in Wilson v. United States, 9 Cir., 1958, 250 F.2d 312. While that case involved a criminal prosecution under Section 2707(c) of the Internal Revenue Code of 1939,[10] it is relevant with respect to the issue of who is a "person" responsible, since the definition of such a person in Section 2707(d) applies to both civil and criminal liability. In Wilson, we said, 250 F.2d at page 316:

"Appellant was chief executive officer of the corporation. It was his responsibility to determine how corporate funds should be expended. He was not himself the 'disbursing officer' for the corporation, but he had the final word as to what bills should or should not be paid, and when. Possessed of such authority and power he came within the purview of Section 2707(d) of the I.R.C.

10. Section 2707(c) reads as follows:
"Any person required under this subchapter to collect, account for and pay over any tax imposed by this subchapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this subchapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

of 1939, which defines a 'person' subject to the preceding subsections of § 2707. * * *"

Appellant's reliance on Cushman v. Wood, D.C.D.Ariz.1956, 149 F.Supp. 644, on this phase of the case is misplaced. In that case the evidence established that the stockholders and directors sought to be charged had wholly delegated such authority to an office manager and did not participate in any way in the nonpayment action.

Appellant's argument that the financing bank and not he was in control of the corporation's finances rests largely on appellant's own testimony. Some of such testimony is not corroborated by the documentary evidence, and some of the testimony is contradicted by the corporation's officer and the officers of the financing bank.

 We have carefully examined the record in this case and are satisfied that the action of the trial court in finding appellant to be the responsible person is supported by substantial evidence. On appeal such finding of the trial court cannot be set aside unless it is "clearly erroneous" under the doctrine of United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. As this Court said in Overman v. Loesser, 9 Cir., 1953, 205 F.2d 521, 524, certiorari denied 1953, 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407, "Since the finding involved the credibility of witnesses, and since it is supported by substantial evidence, it is conclusive upon appeal." We do not sit to second guess the trial court, nor have we the power to do so under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., unless the findings are "clearly erroneous".

Appellant's final and fourth assertion of error is that the trial court applied an improper definition of "willfully" in concluding that appellant willfully failed to pay over the amount of taxes withheld or deducted from the wages of employees of the corporation, under the terms of Section 2707(a). This contention is based on the claim that he was prevented from paying the taxes by the financing bank, and that proof of a criminal intent or motive or purpose to violate the law was necessary to establish civil liability in this case. We have already disposed of appellant's contention that the withheld taxes were not paid over because of the financing bank's purported interference into the internal affairs of the corporation.

 It must be borne in mind that the action instituted against appellant was not designed to impose criminal sanctions, but is a civil action to insure payment to the United States of a tax already collected or deducted by an employer, whose employees have already received credit for the withheld taxes in their individual returns. Section 2707 (a) does not provide for a "double" penalty. In our view there need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions of Section 2707(a). The decision of appellant as the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes was a voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States. In our view such conduct was willful within the meaning of Section 2707(a). See Paddock v Siemoneit, 147 Tex. 571, 218 S.W.2d 428, 7 A.L.R.2d 1062; In re Haynes, D.C.D. Kan.1948, 88 F.Supp. 379; Kellems v. United States, D.C.D.Conn.1951, 97 F. Supp. 681; Nugent v. United States, D. C.N.D.Ill.1955, 136 F.Supp. 875; Levy v. United States, D.C.W.D.La.1956, 140 F. Supp. 834.

Appellant relies on Cushman v. Wood, supra, as standing for the proposition that "willfully" in Section 2707(a) requires criminal conduct and means "without reasonable cause." The court there held, 149 F.Supp. at page 646, "Thus, the basic elements of willfulness are evil motive, lack of justification, bad purpose, or something done or not done

without justifiable excuse." We are unable to agree with the views thus expressed.

The judgment of the district court is affirmed.