**PACIFIC NATIONAL INSURANCE COMPANY, a Corporation,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 41359.**

United States District Court
N. D. California.

July 5, 1967.

---

5. Brookhaven has made no claim for compensation of any easement.

George H. Koster, San Francisco, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE B. HARRIS, Chief Judge.

The pretrial stipulations and orders have measurably reduced the judicial labors of the trial judge. In addition, recognition should be given to the very careful briefing and subsequent oral arguments tendered by both sides to this controversy.

The several issues posed may be answered only after a careful consideration of the detailed factual background:

This action has been brought by Pacific National Insurance Company to recover a penalty tax of $52,881.30 and interest assessed against and collected from it, under Section 6672 of the Internal Revenue Code of 1954 (26 U.S.C. 1964 Ed., § 6672).

Jurisdiction rests upon Section 7422 (a) of the Internal Revenue Code of 1954 (26 U.S.C. 1964 Ed., § 7422) and Section 1346(a) (1) of Title 28 of the United States Code (28 U.S.C. 1964 Ed., § 1346).

The question presented:

(a) Was plaintiff [a1] a "person" required to collect, truthfully account for, and pay over to the United States the income tax and FICA tax withholdings reported for employees of Central States Construction and Equipment Company, Inc. for the second and third quarters of 1955?

(b) Did plaintiff "wilfully" fail to collect or "wilfully" fail to truthfully account for and pay over such taxes to the United States?

The statutes involved: [1]

Sec. 6671. *Rules for Application of Assessable Penalties.*

(a) * * *

(b) Person Defined.—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

Sec. 6672. *Failure to Collect and Pay Over Tax, or Attempt to Evade or Defeat Tax.*

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

Sec. 7701. *Definitions.*

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

(1) Person.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

* * * * * *

(b) Includes and Including.—

The terms "includes" and "including" when used in a definition contained in this title shall not be deemed

---

[a1.] Pacific National Ins. Co. and its predecessor in interest, Manufacturers Casualty Insurance Company.

[1.] All references to "Section" used hereinafter refer to the sections of the Internal Revenue Code of 1954 (26 U.S.C.1964 Ed.).

to exclude other things otherwise within the meaning of the term defined.

(c) * * *

The contentions of the parties are summarized in the pretrial order:

Plaintiff asserts that assessment and collection of the penalty tax and interest in issue were invalid for the following reasons:

(a) Surety was not the employer of the employees of Central States; (b) surety was not obligated or authorized to withhold or collect income or FICA taxes from employees of Central States; (c) surety did not withhold or collect income or FICA taxes from employees of Central States during the quarterly periods ended June 30, 1955, and September 30, 1955, or at any other time; and (d), surety was not a person required to collect, truthfully account for, or pay over any such tax within the meaning of Sections 6671(b) and 6672 of the Internal Revenue Code of 1954, supra, and consequently did not wilfully attempt in any manner to evade or defeat any such tax or the payment thereof.

Defendant contends that the assessment and collection of the entire tax and interest in issue were proper for the reason that (a) surety was the "person" required to collect, truthfully account for and pay over income tax and FICA tax withholdings reported for Central States employees for the quarterly periods ended June 30, 1955, and September 30, 1955, because, by reason of its control and domination over funds available for the payment of creditors of Central States it determined which creditors were to be paid and (b) surety "wilfully" failed to collect, truthfully account for, and pay over such taxes when it caused payments to be made to creditors other than the United States.

■ For the purpose of clarification it should be noted at the threshold of the court's discussion that the bulk of the decisions upon which plaintiff relies, involves issues other than those presented herein. Thus, cases involving questions whether a surety company was the "employer" of the contractor's employees or whether a surety is liable for withholding taxes because of having bonded the contractor's performance, such as Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312; Century Indemnity Co. v. Riddell, 317 F.2d 681 (9th Cir. 1963); Westover v. William Simpson Construction Co., 209 F.2d 908 (9th Cir. 1954); Reliance Insurance Co. v. United States, Civ. No. 37234, N.D.Cal.1959; and American Fidelity Co. v. Delaney, D.C., 114 F.Supp. 702, are entirely beside the point, and are without persuasive value. As clearly observed by the Ninth Circuit, an assessment under Section 6672 "is not one against a transferee of property of an original taxpayer, nor is it one solely of derivative character. Rather, it is one of distinct and separate statutory liability." Bloom v. United States, 9 Cir., 272 F.2d 215, 221.

Plaintiff in threshing about in a welter of inapplicable cases, has obscured the nature and primary purpose of the fund represented by the loan which forms the basis of the controversy.

During the course of the trial testimony was elicited from William T. Atkins, representing the Pacific National in handling all claims against various surety bonds, and Mrs. Ellen Eiswirth who, in 1955, was the acting President of Central States Construction and Equipment Co.

The substance of their testimony is all-controlling and important as demonstrative of surety's complete control and domination of Central States' finances from May through August, 1955.

Some time prior to May of 1955, Mr. Charles Leick, secretary and general counsel of surety, received information that Central States was in financial difficulty. Central States was out of funds and Mrs. Eiswirth went to Philadelphia to attempt to arrange for a bank loan. She met Mr. Leick and was offered financial assistance by the surety. She advised him of the status of the Central States jobs, including several which were not bonded by surety. She further

told him of the general nature of Central States' outstanding bills, one of which was for the withholding taxes for prior periods.

During May of 1955 Central States requested financial assistance from surety, and surety made loans to Central States in amounts approximately equal to its net payrolls. But surety would not loan Central States funds for payment of withholding taxes, although specific requests were made.

Shortly prior to June of 1955, Mr. Leick made arrangements for Central States to borrow $150,000 from Provident Trust Company of Philadelphia. Presumably, the loan was to provide working capital until payments were received on jobs then in progress. The amount of the loan was determined by Mr. Leick after an inspection of the jobs and the examination of Central States' general ledger and job ledgers, creditors' invoices and progress payment information, all of which were made available to him at the Central States offices.

Prior to arranging the loan surety was also furnished with a list of all Central States creditors, which included the United States as a creditor for prior withholding taxes.

Before the loan papers were executed, Mrs. Eiswirth met with Mr. Leick in Philadelphia and requested a letter or formal agreement spelling out the way in which disbursement of the loan proceeds would be handled and the bills which would be paid.

One of the specific items to be covered by the document was withholding taxes. Mr. Leick and Mrs. Eiswirth agreed on the terms of a letter. (Tr. p. 89, 1. 14–25) But on the day the loan papers were signed Mr. Leick told Mrs. Eiswirth that no such letter would be forthcoming because surety might thereby incur a direct liability for payment of taxes to the United States. (Tr. p. 90, 1. 1–20)

On June 3, 1955, Provident Trust Company ostensibly loaned $150,000 to Central States and received therefrom as security assignments of all proceeds due and to become due on the construction contracts bonded by surety, who also guaranteed the loan. At this time Central States had earned approximately $150,000 on these construction contracts.

The proceeds of $150,000 however, never entered Central States' corporate account. Rather, deposit was made in five "special accounts" opened by surety with Provident Trust Company. These accounts were subject to surety's exclusive control. Further, it was agreed that Provident Trust would advise surety upon receipt of progress payments on the assigned contracts and surety would then decide which payments would be applied to reduce the Central States loan or deposited to the special accounts.

The loan proceeds allocated by surety to the four Central States jobs in the Midwest, together with progress payments on the assigned contracts and advances designated by surety for use on those jobs, were thereafter deposited in four "special accounts" which surety had opened at Mercantile Trust Company of St. Louis. Disbursements of these funds were made only on the joint signature of an employee of surety and a member of a St. Louis accounting firm which had been retained by surety to control such funds.

The mechanics of handling the disbursements from the special accounts enabled surety to exercise complete dominion and control of the funds, and to determine in its sole discretion the creditors to be paid. The policy which surety established and carried out, permitted payment of only those obligations which might later give rise to a claim under its bonds. In spite of specific requests made by Central States for funds to cover the amount of the gross payrolls, surety refused to make funds available for anything more than net payrolls.

"Q. Would you relate generally what was said by you and what was said by them?

"A. When I asked for the gross amount of the payroll, both on the telephone and at our job office, and they in turn would ask for the net payroll, I advised them that it was important that we receive the gross so that we could set aside the amount necessary to pay the withholding and other deductible items, they shrugged the matter off completely and said, 'This is all we are going to give you.'" (Tr. p. 88, 1. 6–15; Testimony of Mrs. Eiswirth)

The record, including the transcript and stipulated facts, clearly establishes, and the court finds, that surety was advised when it first offered Central States financial assistance that prior withholding taxes had not been paid; that surety was furnished with information from May through August of 1955, from which it knew that Central States had no funds available for payment of prior or currently accruing withholding taxes; that surety persisted in refusing to make any funds available to pay the delinquent withholding taxes, or to provide for currently accruing withholding taxes.

Further, it is manifest from the record, and the court finds, that surety was exercising complete dominion and control of funds and monies belonging to Central States and the disbursement thereof to the exclusion of obligations due, owing and unpaid to the United States government represented by withholding taxes underlying the penalty assessment herein, and that after June, 1955, surety was the person who decided which creditors were to be paid and when, even though the loan of $150,000 was made from Provident Trust Co. directly to Central States, and Central States was principal obligor.

In addition, as hereinabove observed, Central States assigned as security all monies then due, and to become due, on the contracts then in progress.

In view of the factual background and the legal principles applicable, the conclusion is inevitable that the surety was the person required to collect, truthfully account for and pay over the withholding taxes reported by Central States for the second and third quarters of 1955. The "person" is not limited to the employer as plaintiff contends. Rather, it is the one whose discretion is exercised in finally deciding which creditors are to be paid and when. The borrowed funds were available for the purpose, among others, of discharging the obligations to the government. As illustrated by the testimony herein, the "person" was the surety, acting through its agents and servants, in assuming the ultimate authority for the non-payment of the taxes in question. It was the surety as such "person," who had the final word as to what bills or creditors should or should not be paid and when.

In White v. United States, Ct.Cl., 372 F.2d 513, 516, the court said: " * * * a responsible person is most frequently defined as a person who has 'the final word as to what bills or creditors should or should not be paid and when.' To that effect, see, e. g., United States v. Graham, supra [9 Cir., 309 F.2d 210]; Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 * * *"

Plaintiff's contention that the failure to pay the tax was not "wilful" is not supported either by the facts or by the applicable law.

Whether the surety was "wilful" in failing to collect and account for, or in failing to pay over the withholding taxes reported by Central States, depends upon whether there was a voluntary, conscious and intentional act by the surety in paying other creditors of Central States instead of the tax claims of the United States.

When the withholding taxes underlying the penalty assessment in issue were either past due or currently ac-

cruing, the following factual background existed:

Surety knew that such taxes were not being paid or provided for, and knew that Central States had no funds other than the proceeds of the bank loan and other amounts contracted through special accounts with which to pay or provide for such taxes.

The surety deliberately caused the proceeds of the bank loan and other amounts passing through the special accounts to be disbursed to other creditors in an effort to reduce its potential liability under the bonds. This action then clearly established a voluntary, conscious and intentional preference. Frazier v. United States, 304 F.2d 528 (5th Cir. 1962); Long v. Bacon, D.C., 239 F.Supp. 911.

"* * * there need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions of Section 2707 (a). The decision of appellant as the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes was a voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States. In our view such conduct was willful within the meaning of Section 2707 (a)." Bloom v. United States, supra, 272 F.2d at p. 223.

Plaintiff's assertion that the violation was due to a reasonable cause and therefore not wilful is equally without merit. It is fully supported by the record that Central States, through Mrs. Eiswirth, persistently requested monies with which to pay the withholding taxes, both accrued and accruing. (Tr. pp. 94, 95) Surety's excuse that they could not volunteer surety money for this purpose is based upon a basic misconception. *The $150,000 loan proceeds represented Central States money.* Surety simply refused to make the money available for the payment of taxes, although having agreed to do so when the loan was fixed, as far as Central States was con-

cerned, with reference to its withholding liability. (Tr. p. 93)

Plaintiff relies heavily upon United States v. Hill, 368 F.2d 617 (5th Cir. 1966). The *Hill* case is clearly distinguishable on several grounds which appear on the face of the opinion. The Fifth Circuit sustained a judgment, notwithstanding the verdict. Unlike the situation at bar, it appears in the *Hill* case that during the period in which the underlying tax liability had accrued, the president and secretary-treasurer of the employer corporation had deposited or had control over unencumbered corporate funds sufficient to pay the tax liability (supra, p. 622). Instead, the funds went to pay other creditors.

In the case at bar surety contends that the proceeds of the loan and other income were to be used only for the payment of items which could give rise to claims under the surety's bonds. This contention is contrary to the weight of the evidence. It cannot be inferred that Central States would place all of its potential income under the control of surety, when it knew that its past and future withholding taxes would not be paid.

Further, it should be observed that in *Hill* Section 6672 was treated as a penal statute to be strictly construed, instead of a device of a civil nature designed for the collection of taxes legitimately due and unpaid. Bloom v. United States, supra, 272 F.2d at p. 223.

Also, in the *Hill* case it appears that there were no restrictions placed upon the use of the funds by either the corporation or the lending agency:

"The corporation had had unrestricted use of funds in its bank account during 1961. Jeffus testified that the bank never had the right to refuse to pay any check drawn if the corporation had funds available to cover it. Several deposits were made into the corporation bank account during February, 1962 which did not originate from the assigned contracts." (P. 620)

Contrawise here, surety had complete dominion and control, and did prevent the diversion of the funds of Central States. Their desire was manifest: to reduce the liability on the bonds, and in doing so funds which otherwise were applicable to the government claim were diverted to other channels.

Under these circumstances it is clear from the evidence that the surety was the "responsible" person and knew that the corporate employer had the obligation to pay the taxes. White v. United States, 372 F.2d 513.

In *White,* the trial commissioner's findings of fact and recommendation for conclusions of law were adopted as the basis for the judgment in the case. The opinion of the commissioner as approved by the Circuit Court (p. 514) reviews many of the authorities which have been under discussion herein.

In discussing fiscal controls and the criteria to be applied in determining who is or is not a "responsible person," the court said:

"In reaching a determination with respect to the person or persons upon whom to impose responsibility and liability for the failure to pay taxes, the courts tend to disregard the mechanical functions of the various corporate officers and instead emphasize where the ultimate authority for the decision not to pay the tax lies. For this reason, as the Government points out in its brief, *a responsible person is most frequently defined as a person who has 'the final word as to what bills or creditors should or should not be paid and when.'* To that effect, see, e. g., United States v. Graham, supra; Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960); Sherwood v. United States, 246 F.Supp. 502 (E.D.N.Y.1965); Neale v. United States, 13 A.F.T.R.2d 1721 (D.Kan. 1964); Kolberg v. United States, 13 A.F.T.R.2d 1615 (D.Ariz.1964); Schweitzer v. United States, 193 F. Supp. 309 (D.Nebr.1961).

\* \* \* \* \* \*

"Since the courts are looking for the person who could have seen to it that the taxes were paid, sometimes they just speak more generally about general policy-making authority or fiscal control, instead of pointing more explicitly to authority to direct payment of creditors. Thus, in United States v. Strebler, 313 F.2d 402 (8th Cir. 1963), the court decided that the corporation's president was the person responsible for collecting and paying over taxes withheld because he had the authority to act, and did act, as fiscal manager of that company's affairs, and exercised authority over the general policy, affairs, and finances of the corporation.

"Both approaches would seem to amount to the same thing—*a search for a person with ultimate authority over expenditures of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes.*" (pp. 516, 517) (Italics ours)

The issue with respect to the application of a fund in the amount of $40,411.22 requires a brief discussion:

Plaintiff's argument substantially is that the government did not properly apply the said sum collected on Central States' contracts when it applied such amount to taxes other than those underlying the assessment made against the surety herein. Plaintiff's contention is succinctly stated in its reply brief:

"Mr. Atkins testified that to the best of his knowledge and belief from the memorandum (Ex. 9), made by him in the ordinary course of his work, the $40,411.22 represented money held by the Government and due to Central States. This retention was for work performed on the Dover contracts with the Government as indicated by the reference to contract 5940 and 5966 in Exhibit 9. These contracts were entered into with the government on January 20, 1955 and February 23, 1955 (Stip. Para. VI–E), and the

withheld taxes not paid over for the June 30, 1955 and September 30, 1955 quarters include taxes on wages paid for work on these contracts." (p. 31)

█ Plaintiff's contention that the sum of $40,411.22 constituted a trust fund for the withheld taxes for the second and third quarters of 1955, is not tenable in view of the factual background. It appears that a substantial part of the fund was applied to taxes for earlier quarters. (Stip. Ex. R, Entry of 5/5/58 and 5/7/58)

█ Apparently, application of the sum of $40,411.22 was made in accordance with the policy established by the government with respect to the determination of the amount of an assessment under Section 6672 when there has been a partial collection from the employee. (Stip. par. XVII) When a taxpayer has not made a request for any particular application, the right of the United States to determine for itself the application has been sustained judicially. Datlof v. United States, 370 F.2d 655, 658–659 (3rd Cir. 1966), cert. denied 87 S.Ct. 1688, 18 L.Ed.2d 624, May 15, 1967.

█ The inevitable conclusion from the factual background as delineated hereinabove, is that the surety assumed *absolute* control of all of the funds available to the contractor. This is not the case wherein the surety acted as a mere lending agent. Rather, it caused the funds to be expended in *pro tanto* reduction of its potential liability on the bonds. The primary source of the fund in the later stages of the contractor's debacle, was a loan negotiated in the amount of $150,000 wherein the contractor was the primary obligor. The fund represented was not in effect the surety's funds as such. The court has concluded that this is the type of situation that Congress intended to prevent by the express enactment of Section 6672.

Surety was the responsible person and wilfully failed to act within the contemplation of said section.

Plaintiff's complaint, accordingly, must be dismissed with prejudice.

Findings of fact and conclusions of law may be prepared, served and filed in accordance with the foregoing (Rule 52 F.R.Civ.P.) and judgment of dismissal entered thereon.