

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-1-2004

# E Wind Ind v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"E Wind Ind v. USA" (2004). *2004 Decisions.* Paper 345.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/345

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2230

EAST WIND INDUSTRIES, INC.;
DELAWARE EAST WIND, INC.

v.

UNITED STATES OF AMERICA

(District of New Jersey (Trenton) Civil No. 97-2615)

DELAWARE EAST WIND, INC.

v.

UNITED STATES OF AMERICA

(District of New Jersey (Trenton) Civil No. 97-2617)

East Wind Industries, Inc.,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 97-cv-02615/7)
District Judge: Honorable Mary Little Cooper

Argued: March 26, 2004

Before: AMBRO, CHERTOFF, and BECKER, Circuit Judges

(Opinion filed: September 1, 2004)

Lowell E. Mann, Esq. (Argued)
Gretchen S. Kolb, Esq.
Mann Law Associates
One Oxford Valley, Suite 850
Langhorne, PA   19047

*Attorneys for Appellant*

Eileen J. O'Connor
Assistant Attorney General
Richard Farber, Esq.
Anthony T. Sheehan, Esq. (Argued)
Christopher J. Christie
United States Attorney
United States Department of Justice
Tax Division
P.O. Box 502
Washington, D.C.  20044

*Attorneys for Appellee*

---

OPINION

---

AMBRO, Circuit Judge

East Wind Industries, Inc. ("East Wind") and Delaware East Wind, Inc. ("Delaware East") seek a refund for the overpayment of federal payroll tax liability.  They appeal the District Court's order vacating a previous award to them and ordering a lower refund amount.  For the reasons set out below, we affirm in part, reverse in part and remand only for ministerial matters.

## I. Factual and Procedural Background

The tortured history of this case goes back almost twenty years. East Wind and Delaware East filed for Chapter 11 bankruptcy protection in the 1980s. At the time they filed Chapter 11, both companies had unpaid federal payroll taxes, and penalties were assessed. Although the details are disputed, both East Wind and Delaware East ultimately paid certain past due payroll taxes, along with penalties and interest thereon.

In May 1997, East Wind and Delaware East filed separate complaints in the United States District Court for the District of New Jersey against the United States of America (the "Government") requesting a refund for tax penalties paid.[1] Amended complaints were filed in October 1997.[2] A second amended complaint was filed in December 1998, but was never served. Prior to the filing of the second amended complaint, cross-motions for summary judgment were filed.

In January 1999, the District Court denied East Wind's summary judgment motion and granted summary judgment in favor of the Government. See East Wind Indus., Inc. v. United States, 33 F. Supp. 2d 339 (D.N.J. 1999) ("East Wind I"). On appeal, we reversed the decision of the District Court and ordered that judgment be entered for East

---

[1] The merits of the underlying suit are not important to the issues on appeal. Stated simply, East Wind and Delaware East claimed entitlement to a refund because their failure to pay payroll taxes timely (the source of the penalties) was excused for reasonable cause. See 26 U.S.C. §§ 6651(a)(2), 6656(a).

[2] East Wind's and Delaware East's cases were consolidated after the filing of the amended complaints. Accordingly, as context requires, "East Wind" hereinafter refers to both entities collectively or to East Wind in its individual capacity.

Wind.  See East Wind Indus., Inc. v. United States, 196 F.3d 499 (3d Cir. 1999) ("East Wind II").  In November 2000, the District Court ordered the IRS to pay East Wind approximately $800,000, this amount including approximately $240,000 in penalties and $560,000 in interest.

The Government filed motions to stay and for reconsideration of the November 2000 Order.  For the first time, the Government claimed a right to setoff certain unpaid taxes by East Wind against the judgment award.  In the alternative, the Government claimed the judgment award was not supported by the record.  In a June 2001 memorandum and order, the District Court denied the request for setoff, concluding that the Government waived any such right by failing to raise it in a timely manner.  The Court, however, granted the motion to stay and ordered an evidentiary hearing.

That hearing occurred over the course of several nonconsecutive days.  After the hearing's close, (1) the Government filed a motion for leave either to (a) file an answer to the second amended complaint or (b) amend its answer to the amended complaint to raise a setoff defense, and (2) East Wind filed a motion to withdraw the second amended complaint.  In March 2003, the District Court issued a memorandum and order in which it: (1) denied the Government's request to file an answer or amend its answer, concluding that (a) the second amended complaint was inoperative because it was never served and (b) amending the answer would prejudice East Wind; (2) denied East Wind's motion to withdraw the second amended complaint as moot; (3) vacated the November 2000 Order; and (4) despite finding the evidence conflicting and inconclusive, ordered a reduced

4

judgment in favor of East Wind for approximately $197,000, this amount reflecting $110,000 in penalties and $87,000 in interest. East Wind appeals.

## II. Jurisdiction and Standard of Review

Appellate jurisdiction exists under 28 U.S.C. § 1291. The District Court's decision to grant or deny a motion for reconsideration is reviewed for abuse of discretion. See Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1203 (3d Cir. 1995)). As for the District Court's ultimate conclusions on the merits, we review issues of law *de novo* and questions of fact for clear error. Id.

## III. Analysis

East Wind alleges the District Court committed several errors by vacating its November 2000 Order and reducing the judgment award from $800,000 to $197,000. First, East Wind argues the Government is estopped from challenging the November 2000 Order. It also alleges that it is entitled to additional interest on the penalties it paid. Finally, East Wind contends that, in calculating the refunds, the District Court did not take into account all payments made toward tax obligations. The first two arguments are unpersuasive, but we agree with the third. Accordingly, both Delaware East and East Wind are entitled to larger refunds.

### A. Estoppel

East Wind advances a number of related arguments, all to the effect that the Government should be estopped from challenging the November 2000 Order. According

5

to East Wind, the Government never contested the penalty amount prior to the motion for reconsideration.  Therefore, the refund award in the November 2000 Order should stand.

Examining the record, however, we discover that the IRS never conceded the amount of tax penalties paid; indeed, its disagreement was noted at every stage of litigation.  Even East Wind recognized the disagreement, as its Statement of Facts in support of its cross-motion for summary judgment concedes that "[a]t this juncture, the parties are not in complete agreement as to the exact amount of penalties paid by the plaintiffs."  This same disclaimer appears in the District Court's Final Pretrial Order.  In its prior opinion in East Wind I, the District Court stated:  "The parties note that there is some disagreement as to the exact amount of penalties paid by the plaintiff.  However, we need not determine the exact amount for the purposes of this motion . . . ."  33 F. Supp. 2d at 341 n.2 (internal citation omitted).  On appeal, we previously stated:  "The parties disagree as to the exact amount of the penalties paid by the Taxpayers.  This issue is irrelevant for purposes of this appeal."  East Wind II, 196 F.3d at 501 n.2.  Therefore, we conclude that the Government is not estopped from challenging the November 2000 Order.

**B. Interest on Penalties Paid**

In certain circumstances, a taxpayer receiving a refund is entitled to interest on that amount.  See 26 U.S.C. § 6611(a) (stating that "interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax").  East Wind contends the District Court erred in revisiting the interest calculations in the November 2000 Order.  In

other words, East Wind argues that the November 2000 Order awarded it the correct amount of interest and that the March 2003 Memorandum and Order awarded the incorrect amount of interest.[3]

We disagree. To begin, the November 2000 Order erroneously concluded that interest was recoverable from the date each penalty was assessed instead of when the penalty was paid. See 26 U.S.C. § 6611(b)(2) (stating that interest on the amount refunded is calculated "from the date of the overpayment to a date . . . preceding the date of the refund check by not more than 30 days"). With the exceptions discussed below, the record shows that both East Wind entities made payments on their tax liabilities, including tax penalties, at various times in the early to mid-1990s. Thus, the November 2000 Order significantly inflated the interest award. For example, a $10,868.50 penalty for failure to pay payroll taxes assessed in 1982 resulted in an interest award of $46,977 in the November 2000 Order.[4] However, the March 2003 Memorandum and Order correctly concludes that interest should be calculated from the date East Wind actually paid the penalties.

## C. Accounting for All Payments Made

The East Wind entities also argue that they never received credit for payments made in satisfaction of their tax obligations. They contend that, when these payments are

_____

[3] The Government does not dispute that East Wind is entitled to interest.

[4] As noted above, interest accounted for approximately $560,000 of the $800,000 awarded in the November 2000 Order.

accounted for, a larger refund is due. But for a minor amount, we agree with the District Court's conclusions as to the refund awarded to Delaware East. We disagree, however, with the refund awarded to East Wind.

(1) Refund Awarded to Delaware East

Determining Delaware East's refund is fairly straightforward. The proofs of claim filed in its bankruptcy are the only evidence in the record of penalties assessed by the Internal Revenue Service ("IRS"). These proofs of claim requested a total of $158,476.68 in penalties, but the record demonstrates that Delaware East paid only a fraction of this amount. (The November 2000 Order mistakenly awarded Delaware East the full $158,476.68.) In November 1996, Delaware East paid $23,845.03 in penalties, or 15.0464% of the face value of the proofs of claim. This is the amount awarded to Delaware East in the March 2003 Order. On a minor note, the District Court overlooked an additional payment of $609.48 made by Delaware East in April 1997. We conclude that it is entitled to an additional refund of this amount.

(2) Refund Awarded to East Wind

Determining East Wind's refund is more complicated. In addition to the amount awarded it, East Wind vigorously asserts, *inter alia*, that the District Court failed to credit it with three $40,000 payments made on its behalf by its principal owner and officer, Mario D'Antonio. The District Court concluded that, while it was unclear exactly how these payments were applied, "the IRS likely applied them toward interest." Accordingly, the Court declined to account for these payments when calculating East Wind's refund.

8

We come out differently.

An Installment Agreement executed by both Mario D'Antonio and the IRS indicates that D'Antonio was individually assessed a 100% penalty pursuant to 26 U.S.C. § 6672.[5]  Under the Installment Agreement, D'Antonio was to make payments of $40,000 every three months, starting September 1986.  The record shows that he drew three separate $40,000 certified checks on a personal checking account on August 29, 1986, December 2, 1986, and March 3, 1987, respectively.  The timing of these payments coincides with the anticipated Installment Agreement payments.

Section 6672 was "designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil . . . penalties for the employer's delinquency."  Slodov v. United States, 436 U.S. 238, 247 (U.S. 1978).  "The personal liability created under § 6672 is separate and distinct from that imposed upon the employer under § 3403 of the Code."  Datlof v. United States, 370 F.2d 655, 656 (3d Cir. 1966) (citing Bloom v. United States, 272 F.2d 215, 221 (9th Cir. 1959); Rosenberg v. United States, 327 F.2d 362, 364-365 (2d Cir. 1964)); see also Monday v. United States, 421 F.2d 1210, 1218 (7th Cir. 1970).  Section 6672 liability,

---

[5] This provision provides:  "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."  26 U.S.C. § 6672(a).

however, must be considered in relation to the underlying tax liability. Even though § 6672 refers "to responsible person liability as a penalty . . .[,] this characterization does not alter [the] essential character" of the obligation as a tax. IRS v. Energy Res. Co., 871 F.2d 223, 232 (1st Cir. 1989) (internal quotations omitted) (citing United States v. Sotelo, 436 U.S. 268, 275 (1978)); see also United States v. Huckabee Auto Co., 783 F.2d 1546, 1548 (11th Cir. 1986) ("Although denoted a penalty in the statute, the liability imposed by section 6672 is not penal in nature, but is 'simply a means of ensuring that the tax is paid.'" (internal citation omitted) (quoting Botta v. Scanlon, 314 F.2d 392, 393 (2d Cir. 1963))). In practice, "the IRS collects the amount of the unpaid trust fund taxes *only once*, from the 'responsible' individuals, the corporate debtor, or some combination thereof." Energy Res. Co., 871 F.2d at 233 (citing Sotelo, 436 U.S. at 279 n.12); (emphasis in text) see also USLIFE Title Ins. Co. v. Harbison, 784 F.2d 1238, 1243 & n.7 (5th Cir. 1986) (citing IRS Policy Statement P-5-60, reprinted in 1 Administration, CCH Internal Revenue Manual 1305-15). Thus § 6672 does not impose *additional* tax liability; it merely makes responsible individuals liable for any unpaid payroll taxes.

In this context, D'Antonio's three $40,000 payments must be applied toward East Wind's tax obligations. It appears that the following payments were made to the IRS by D'Antonio and East Wind in satisfaction of East Wind's federal payroll tax obligations:[6]

---

[6] As the District Court did, we rely on proofs of claim filed by the Government in East Wind's Chapter 11. These claims are broken down into amounts for unemployment taxes ("940 taxes") and employment taxes ("941 taxes").

Chart 1: Payments Made in Satisfaction of East Wind's Tax Obligations

| Check No. | Date | Payment |
|-----------|------|---------|
| 128712 | August 29, 1986 | $40,000.00 |
| 131872 | December 2, 1986 | $40,000.00 |
| 139637 | March 3, 1987 | $40,000.00 |
| 1029 | June 14, 1994 | $438,885.00 |
| 1054 | April 20, 1995 | $40,744.65 |
| 1143 | April 26, 1995 | $161,760.28 |
| 1105 | April 21, 1998 | $2,585.12 |

Applying these payments (using the same methodology employed by the District Court)

yields the following results:

Chart 2: Application of D'Antonio Check No. 128712

| Type of Tax | Tax Period | Tax | Penalty | Interest | Running Total[7] |
|-------------|-----------|-----|---------|----------|------------------|
| 941 | 8206 | $0.00 | $10,868.50 | $3,100.85 | $13,969.35 |
| 941 | 8209 | $26,030.65[8] | | | $40,000.00 |

---

[7] This column tracks the cumulative exhaustion of D'Antonio's and East Wind's payments as these payments are applied to satisfy East Wind's tax liability.

[8] The full 941 tax due for this period was $122,643.55. Check number 128712, however, was exhausted after satisfying only $26,030.65 of this amount. Accordingly, we conclude that the remainder of the 941 tax from this period was satisfied by subsequent payments.

Chart 3: Application of D'Antonio Check No. 131872

| Type of Tax | Tax Period | Tax | Penalty | Interest | Running Total |
|---|---|---|---|---|---|
| 941 | 8209 | $40,000.00[9] | | | $40,000.00 |

Chart 4: Application of D'Antonio Check No. 139637

| Type of Tax | Tax Period | Tax | Penalty | Interest | Running Total |
|---|---|---|---|---|---|
| 941 | 8209 | $40,000.00[10] | | | $40,000.00 |

---

[9] The full 941 tax due for this period was $122,643.55. Check numbers 128712 and 131872, however, were exhausted after satisfying only $66,030.65 of this amount. Accordingly, we conclude that the remainder of the 941 tax from this period was satisfied by subsequent payments.

[10] The full 941 tax due for this period was $122,643.55. Check numbers 128712, 131872 and 139637, however, were exhausted after satisfying only $106,030.65 of this amount. Accordingly, we conclude that the remainder of the 941 tax from this period, in addition to the penalty and interest, was satisfied by check number 1029 of East Wind.

Chart 5: Application of East Wind Check No. 1029

| Type of Tax | Tax Period | Tax | Penalty | Interest | Running Total |
|---|---|---|---|---|---|
| 941 | 8209 | $16,612.90 | $19,443.18 | $47,501.26 | $83,557.34 |
| 941 | 8309 | $35,441.56 | $4,060.14 | $3,233.82 | $126,292.86 |
| 941 | 8312 | $33,768.78 | $2,869.15 | $1,992.44 | $164,923.23 |
| 940 | 8312 | $43,747.49 | $4,092.58 | $2,603.47 | $215,366.77 |
| 941 | 8406 | $25,606.04 | $0.00 | $7.70 | $240,980.51 |
| 941 | 8409 | $11,573.68 | $0.00 | $0.00 | $252,554.19 |
| 940 | 8412 | $1,464.38 | $0.00 | $0.00 | $254,018.57 |
| 941 | 8412 | $10,012.77 | $6,177.54 | $13,210.11 | $283,418.99 |
| 941 | 8503 | $15,692.58 | $3,545.42 | $6,176.12 | $308,833.11 |
| 941 | 8506 | $16,104.76 | $5,229.98 | $6,046.98 | $336,214.83 |
| 941 | 8603 | $0.00 | $5,237.99 | $1,404.04 | $342,856.86 |
| 941 | 8606 | $0.00 | $219.52 | $359.31 | $343,435.69 |
| 941 | 8609 | $74,667.90 | $13,813.17 | $6,968.24[11] | $438,885.00 |
| | | total: | $64,688.67 | | |

[11] The full interest due for this period was $11,427.05. Check number 1029, however, was exhausted after satisfying only $6,968.24 of this amount. Accordingly, we conclude that the remainder of the interest from this period was satisfied by check number 1054.

Chart 6: Application of East Wind Check No. 1054

| Type of Tax | Tax Period | Tax | Penalty | Interest | Running Total |
|---|---|---|---|---|---|
| 941 | 8609 | $0.00 | $0.00 | $4,458.81 | $4,458.81 |
| 940 | 8612 | $36,285.84[12] | | | $40,744.65 |

Chart 7: Application of East Wind Check No. 1143

| Type of Tax | Tax Period | Tax | Penalty | Interest | Running Total |
|---|---|---|---|---|---|
| 940 | 8612 | $11,876.24 | $8,187.54 | $6,007.88 | $26,071.66 |

Based on the preceding figures, we conclude the following: A total of $763,975.05 in payments were made in satisfaction of East Wind's tax obligations. Of these payments, $83,744.71 were paid toward penalties. And after applying all payments toward the tax, penalty and interest figures in the IRS proofs of claim, $138,273.74 in excess payments — reflecting a portion of Check No. 1143 and all of Check No. 1105 — remain unapplied.

The only remaining issue is whether East Wind is entitled to a refund of unapplied payments. The District Court responded no, concluding that any remaining sums "were applied toward other East Wind tax liabilities." The Government raises a separate rationale, arguing East Wind failed to meet its burden that it is entitled to any additional

---

[12] The full 940 tax due for this period was $48,162.08. Check number 1054, however, was exhausted after satisfying only $36,285.84 of this amount. Accordingly, we conclude that the remainder of the 940 tax from this period, in addition to the penalty and interest, was satisfied by check number 1143.

refund.  See United States v. Janis, 428 U.S. 433, 440 (1976) ("In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover."); Franciso v. United States, 267 F.3d 303, 319 (3d Cir. 2001) (same).  In the context of this case, we disagree and conclude that East Wind is entitled to a refund of the unapplied payments.

First, the District Court's conclusion is inconsistent with its holding regarding setoff.  In a potential setoff situation, the Government compares a taxpayer's overall tax liability to the amount of total payments made.  If the taxpayer is entitled to a refund for overpayment of one type of tax (or interest or penalty), but has not fully paid another type of tax, the Government may net the two amounts (or *setoff* the amount owed the Government from the amount of refund due).  Therefore, in determining that otherwise unapplied payments should be applied toward other East Wind tax liabilities, the District Court *de facto* granted the Government's request for setoff.  In light of the Court's holding that the Government was not entitled to setoff any unpaid tax liability against any refund due East Wind,[13] this conclusion was improper.

In addition, the Supreme Court has recognized that, if a tax assessment is "without rational foundation," the normal burden of proof shifts from the taxpayer (to prove the amount of refund) to the Government (to prove the amount of tax owed).  Janis, 428 U.S. at 441 (citation omitted).  The District Court found it impossible to recreate accurately

---

[13] The Government waived the right to challenge the District Court's conclusion that setoff is improper by failing to raise the issue on appeal.  See, e.g., Kopec v. Tate, 361 F.3d 772, 775 n.5 (3d Cir. 2004); Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994).

15

East Wind's tax liability because of "errors and omissions in the IRS records" and the fact that the IRS on numerous occasions applied payments incorrectly and inconsistently. Further, remand would be of little use in this case because the District Court has already held an evidentiary hearing and concluded that the "hearing did not resolve for the Court how much . . . should be refunded to East Wind." Under these unique facts, the usual rule that East Wind must prove that it is entitled to a refund of the unapplied payments is inapplicable. See id. at 440-41. Because the record before us does not establish that East Wind owes $138,273.74 in additional tax liability, it is entitled to a refund of this amount.

\* \* \* \* \*

For the foregoing reasons, we affirm in part and reverse in part. Taking together the sums awarded by the District Court and the additional amounts we order, we remand only for the District Court to enter a judgment: (1) awarding Delaware East (a) $23,845.03, with overpayment interest calculated from November 7, 1996 through the date of entry of judgment; and (b) $609.48, with overpayment interest calculated from April 10, 1997 through the date of entry of judgment; and (2) awarding East Wind (a) $10,868.50, with overpayment interest calculated from August 29, 1986 through the date of entry of judgment; (b) $64,688.67, with overpayment interest calculated from June 14, 1994 through the date of entry of judgment; (c) $4,458.81, with overpayment interest calculated from April 20, 1995 through the date of entry of judgment; (d) $143,876.16, with overpayment interest calculated from April 26, 1995 through the date of entry of judgment; and (e) $2,585.12, with overpayment interest calculated from April 21, 1998

16

through the date of entry of judgment.[14]

---

[14] We recognize the difficult and frustrating nature of this case and the less than helpful submissions of the parties. Despite these hardships, District Judge Cooper persevered. We commend her for doing so in such a thoughtful and thorough way.